# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MAX AND WANDA ARCHULETA, Individually
and as Natural Guardians and next friend of their
minor child, ROBERT ARCHULETA,

      Plaintiff,

  -vs-                                              No. CIV 97-1020 LH/DJS

EDWARD Ramsey, individually and in his official
capacity as Questa High School principal, and
STEVEN ARCHULETA, individually and in his
official capacity as Questa High School
Superintendent,

      Defendants.

## **MEMORANDUM OPINION**

**THIS MATTER** comes on for consideration of the issue of jurisdiction. By letter dated January 20, 1999, the Court notified counsel that in preparation for trial it had reviewed 20 U.S.C. § 1415(f) and the Tenth Circuit cases of *Association for Community Living In Colorado*, 992 F.2d 1040 (1993), and *Hayes v. Unified School District No. 377*, 877 F.2d 809 (1989), which brought into question whether the Court has jurisdiction to hear this matter. The Court requested that the parties brief this issue. That briefing is now complete. The Court, having considered the pleadings submitted by the parties, the applicable law, and otherwise being fully advised, finds that it does not have jurisdiction and that this case will be dismissed.

**FACTS**

Plaintiffs brought suit under 42 U.S.C. § 1983, seeking damages for deprivation of liberty and property without due process of law because Robert allegedly was expelled without a hearing from Questa High School for the 1995-96 school year. (Pre-Trial Order (Docket No. 37) at 1.) By Order entered October 8, 1998, the Court granted in part Defendants' Motion for Summary Judgment as to the claims asserted by Max and Wanda Archuleta (the Archuletas). Thus, only Robert's claims remain in this case.

On May 18, 1995, Robert Archuleta, a Special Education student with a diagnosis of Attention Deficit Disorder, was smoking cigarettes in a janitor's closet at Questa High School with three other students. (Rev'd J. Findings Fact (Docket No. 48) ¶ 1-3.) One of the other students intentionally set fire to a mop and all four then left the room. (*Id.* ¶ 2.) Neither Robert nor any of the other students attempted to extinguish the fire or to notify anyone of its existence. (*Id.*) The fire caused extensive damage to the school and physical injury to Principal Ramsey. (*Id.* ¶ 1.)

On May 24, 1995, Principal Ramsey held a meeting with Robert and his parents to discuss Robert's involvement in the fire. (*Id.* ¶ 3.) Robert was suspended for ten days, with the imposition of further sanctions to be decided later. (*Id.*) The Archuletas did not object to this suspension. (*Id.*) Prior to the expiration of the suspension period, the school year ended. (*Id.*)

On August 2, 1995, Principal Ramsey sent a letter to the Archuletas summarizing the discussion at a meeting held with them that morning. (*Id.* ¶ 4; Compl. (Docket No. 1) ¶ 4, 5.) The letter detailed five alleged violations of school policies by Robert and informed the Archuletas that expulsion for 365 days was being contemplated and would be enacted pursuant to state law. (Rev'd J. Findings Fact ¶ 4; Compl. ¶ 5.) The letter also stated that the Archuletas would receive

2

further communications from the Superintendent of Schools or his representative. (Rev'd J. Findings Fact ¶ 4.)

On August 16, 1995, Plaintiff's counsel wrote a letter to Defendants to explain that Robert had committed no offense and to demand that a hearing be held on the allegations so that Robert could demonstrate this and resume his attendance at the Questa Schools. (Compl. ¶ 6.) Defendants did not respond to this letter. (*Id.*) During the third week of August 1995, Wanda Archuleta met with Defendants, who allegedly informed her that Robert would not be allowed to attend school, that the expulsion would be permanent, and that there would be no hearing. (*Id.* ¶ 7.) Plaintiff's counsel wrote a second letter to Defendants on August 23, 1995, expressing the understanding of the Archuletas that Robert had been permanently expelled and stating that if no response was received, it would be assumed that Questa Independent Schools had made the decision of expulsion. (*Id.* ¶ 8.) Again, Defendants did not respond directly to the letter. (*Id.* ¶ 9.)

A Parent Notification of Conference, however, subsequently was delivered to the Archuletas. (Pl's. Proposed Ex. 4; Defs.' Proposed Ex. D.) The notification form indicated in handwriting that the conference was scheduled to discuss Robert's "Alternative Suspension/IEP + schooling + Expulsion." (Pl's. Proposed Ex. 4 at 1; Defs.' Proposed Ex. D at 1.) The form also informed the Archuletas, "You may ask anyone you wish to attend." (Pl's. Proposed Ex. 4 at 1; Defs.' Proposed Ex. D at 1.) Additionally, the form stated: "As the parent of a student who will be/has been formally evaluated and/or is receiving special education services, you have certain parent rights listed in brief on the back of this notice. Please review them carefully." (Pl's. Proposed Ex. 4 at 1; Defs.' Proposed Ex. D at 1.) A statement of "Parent's Rights &

3

Responsibilities in Brief" was printed on the form.  (Pl's. Proposed Ex. 4 at 3; Defs.' Proposed Ex. D at 3.)

Plaintiff and his parents and the Independent Evaluation Team, including Special Education Coordinator Jana Rael, Special Education Teacher Janice Valdez, Guidance Counselor Arlene Trujillo, Principal Ramsey, and Regional Special Educational Director J. Rudy Montoya, met on September 1, 1995, to discuss proposed alternative placement for Robert.  (Rev'd J. Findings Fact ¶ 5.)  The Individual Education Program prepared at this meeting provided for off-campus instruction two hours per day, twice a week, at the Questa Police Department.  (Memo. Br. Supp. Retention Jurisdiction (Docket No. 49) at 2.)

Robert attended Questa High School during the 1996-97 school year, receiving regular on-campus special education instruction.  (Rev'd J. Findings Fact ¶ 7.)  During that school year he was suspended for periods of ten and forty-five days.  (*Id.*)  During the longer suspension he again received off-campus instruction.  (*Id.*)  No objections to these suspensions have been raised.  (*Id.*)  At the end of the school year, Robert was promoted to the 10th grade.  (*Id.*)  The Archuletas brought this suit on August 4, 1997.  (Compl.)  Robert moved to the state of Colorado on September 1, 1997.  (*Id.* ¶ 8.)

**THE LAW**

The Individuals with Disabilities Education Act (IDEA) provides several procedural safeguards to parents and their children to guarantee that students are provided a "free appropriate public education."  20 U.S.C. § 1415.  These include an impartial due process hearing at the local or state level, *id.* § 1415(b)(2), and review of any local decision by a state educational agency, *id.* § 1415(c).  A state decision may be appealed to state or federal court.  *Id.* § 1415(e)(2).  The court

"shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* Additionally, the IDEA does not restrict or limit any other rights and remedies that may be available to students,

> *except* that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedure under subsections (b)(2) and (c) of this section [the due process hearing and review] *shall be exhausted* to the same extent as would be required had the action been brought under this subchapter.

*Id.* § 1415(f)(emphasis added).

> The requirement of administrative exhaustion serves several important purposes:
>
> (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*Association for Community Living in Colo. v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993)(quoting *Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 814 (10th Cir. 1989)). Exhaustion is not required, however, if it would be futile, fail to provide adequate relief, or if "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." *Id.* Administrative remedies or due process provisions are "generally inadequate or futile where plaintiffs allege structural or systemic failure and seek systemwide reforms." *Id.* The third exception to the exhaustion requirement is not necessarily met by "challenging a policy of general applicability rather than an IEP formulated pursuant to that policy." *Id.* A plaintiff "must still show that the policy is contrary to law and that the underlying purposes of exhaustion would not be served." *Id.* "Contrary to law" means that "exhaustion may be unnecessary if the alleged

5

violations raise only questions of law, thereby rendering agency expertise and the factual development of an administrative record less important." *Id.* Absent an exception, however, failure to exhaust administrative remedies is jurisdictional, requiring dismissal of the cause. *Association for Community Living*, 992 F.2d at 1042; *Hayes*, 877 F.2d at 810.

**ANALYSIS**

Both parties concede that this suit is subject to the exhaustion requirements of the IDEA. Plaintiff contends, however, that he attempted to exhaust his administrative remedies through the two letters sent by his counsel demanding a hearing, which demands he maintains were ignored, and that further attempts to exhaust his remedies would be futile.

The Court cannot agree with Plaintiff's characterization of the events. Clearly, a meeting to discuss Robert's educational program was held on September 1, 1995, subsequent to the letters sent by counsel to Defendants. Plaintiff engaged in no effort whatsoever after that meeting to challenge the resulting IEP. Additionally, there is no evidence, beyond Plaintiff's conclusory assertion, that it would be unreasonable to expect Plaintiff to have requested a hearing if not satisfied with the results of the September 1st meeting.

Plaintiff also argues that Defendants should not be allowed the protections of the IDEA because they ignored the "stay put" requirements of the Act during May and August 1995. The "stay put" provision of the IDEA provides that "the child shall remain in his current educational placement '[d]uring the pendency of any proceedings conducted pursuant to this section.'" *Doe v. Rockingham Co. Sch. Bd.*, 658 F. Supp. 403, 409 (W.D. Vir. 1987)(quoting 20 U.S.C. § 1415(e)(3)[now 20 U.S.C. § 1415(3)(A)]). Even if Defendants should have kept Robert enrolled in his then educational placement following the fire, a question that the Court does not reach, that

does not excuse or justify Plaintiff's failure to challenge his educational program for the 1995-96 school year, which is the gravamen of his Complaint, through the mechanisms provided by the IDEA.

Plaintiff having presented no evidence in support of his allegation of futility or any other exception to the exhaustion requirement, this case will be dismissed for lack of jurisdiction.

                                                  _____
                                                  **UNITED STATES DISTRICT JUDGE**